THE PEOPLE OF THE STATE OF NEW YORK, RESPOND-
ENT, *v.* GEORGE REILLY, APPELLANT.

*Distributing, under a false name, a circular offering to sell counterfeit money —*
*conviction thereof, under section 527 of the Penal Code, as amended by chapter 687*
*of 1887.*

The defendant, who had assumed several names, called at the place of business of
Mary Casey, on India street, Greenpoint, about the middle of May, 1888, and
requested her to allow a letter to be directed to her place for him. She granted
his request and he gave her a paper upon which was written the name of C. E.
Fuller as the address, and, in reference to the delivery of the letters, he
informed her that he might send a boy or somebody, and directed her to deliver
them to any one he might send.

In pursuance of that arrangement one letter was received which was delivered to
him personally when he called for it, and he sent a man for letters on two other
occasions who received none. After that several letters came which were seized
and opened by the officers of the law.

One of the letters so seized was dated Thomas, Arizona territory, May 25. 1888,
addressed to C. E. Fuller, and closed with the words "address as per slip
inside," and upon that slip inside was written "John C. Green, Solomonville,
Graham Co., Arizona." Inclosed in that letter and returned to C. E. Fuller,
149 India street, Greenpoint, Long Island, N. Y., was a circular containing
propositions to sell money, and stating that there was no risk as the money was
perfect, as the inclosed newspaper clipping would prove, and requesting persons
addressed to come to New York city and consummate the deal, for the reason that
the writer would only deal face to face with his customers, because that was the
safest and most satisfactory way, and closing with these words: "I will always
return your letters to you, and as a guaranty of your confidence I also request
the return of this letter and newspaper clipping." "Address as per slip."

The newspaper clipping purported to contain an account of the arrest and exam-
ination of Charles A. Becker for selling counterfeit money, and stated that the
experts employed by the department at Washington made a sworn report "that
all these United States treasury notes found with Becker were printed with
genuine plates used by former workmen in the printing-bureau," and that they
could not say that the bills were counterfeit, as they were positive the bills were
as good as any issued by the government.

Similar transactions by the defendant at another place and under another name
were shown.

Upon an appeal by the defendant from a judgment of conviction, he claimed that
it was necessary for the public prosecutor to prove that the letters received at
India street were sent there by reason of some relation or correspondence with
the defendant, and he insisted that no proof had been given to show knowledge
in the defendant of the reception of such letters, or that he made any attempt
to get them, or that he knew the writer of such letters or had any correspond-
ence with him, or knew the contents of the letters.

*Held*, that the natural inferences from established facts were legitimate evidence in all cases, both civil and criminal, and that the deduction to be drawn from the uncontradicted testimony and the established facts in this case connected the defendant with the issuance of the circular beyond any reasonable doubt.

That the evidence was sufficient to convict the defendant of circulating and distributing a circular offering for sale counterfeit paper money, and of using a false, fictitious and assumed name to promote and carry on a scheme for the sale, and offering for sale, of counterfeit paper money, and that his conviction for such crime, under section 527 of the Penal Code, as amended by chapter 687 of 1887, was justified by the evidence.

APPEAL by the defendant from a judgment of conviction in the Court of Sessions of the county of Kings, on the twenty-fifth day of July, 1888, convicting the defendant of the offense of distributing circulars under a false name, and offering to sell counterfeit money, as defined by section 527 of the Penal Code of the State of New York.

*Jerry A. Wernberg*, for the appellant.

*James W. Ridgway*, district-attorney, and *John U. Shorter*, assistant district attorney, for the People.

DYKMAN, J.:

By the provisions of section 527 of the Penal Code of the State of New York, any person who, with intent to defraud, circulates or distributes a letter or circular, or any other written or printed matter offering for sale counterfeit coin or paper money, or giving or purporting to give information where counterfeit coin or paper money can be procured, is punishable by imprisonment or fine, or by both. That section of the Code was expanded by an amendment in 1887, so as to include within its ample provisions every device to which resort can be had for the sale or distribution of counterfeit coin or paper money (chap. 687, Laws of 1887), and the disclosures in the record now before us make it apparent that the enlargement of the statute came none too soon. The scheme devised by this defendant might have afforded him safety and enabled him to escape detection if the statute had been less comprehensive or less explicit and severe.

The defendant, who has used several names, called at the place of business of one Mary Casey, in India street, Greenpoint, about

the middle of May, 1888, and requested her to allow a letter to be directed to her place for him. She granted his request, and he gave her a paper upon which was written the name C. E. Fuller as the address, and in reference to the delivery of the letter he informed the woman that he might send a boy or somebody, and directed her to deliver them to any one he might send. In pursuance of that arrangement one letter was received which was delivered to him, personally, when he called for it, and he sent another man for letters on two other occasions, but the man received none. After that several letters came which were seized and opened by the officers of the law. One of the letters so seized was dated " Thomas, Arizona Territory, May 25, 1888 ;" addressed to C. E. Fuller, and closed with the words " address as per slip inside," and upon that slip inside was written " John S. Green, Solomonville, Graham Co., Arizona." Inclosed in that letter, and returned to C. E. Fuller, 149 India street, Greenpoint, Long Island, N. Y., was a circular containing propositions to sell money and stating that there was no risk, as the money was perfect, as the inclosed newspaper clipping would prove, and requesting the person addressed to come to New York city to consummate the deal, because the writer would only deal face to face with his customer, because that was the safest and most satisfactory way, and closing with these words : " I will always return your letters to you, and as a guaranty of your confidence I also request the return of this letter and newspaper clipping." "Address as per slip." The letter from Green was evidently an answer to that circular, and inclosing the same as requested. The newspaper slip purported to contain an account of the arrest and examination of Charles A. Becker for selling counterfeit money, when the experts employed by the department at Washington made a sworn report "that all these United States treasury notes found with Becker were printed from genuine plates used by former workmen in the printing bureau." It was further stated in the slip that it had long been known that some person had possession of a set of plates supposed to have been furnished by one of the engravers in the engraving bureau ; that the experts stated that they could not say the bills examined in court were counterfeit, as they were positive the bills were as good as any issued by the government. That some one was growing rich in

a safe, fast and sure manner. It was also stated that the same parties were in possession of the original plates of the Dominion of Canada notes, one's two's and a five. There were ten letters of a similar character, addressed to C. E. Fuller, from different persons, each containing a returned circular, received at the India street station of the defendant, and all to the same purport as the one which we have described.

But the defendant did not confine his operations to one place. On the 19th day of May, 1888, he went to the store of Ellen Dougherty, at 610 Manhattan avenue, Greenpoint, and desired to have a letter directed to him at her store, and she consented, and he said his name was John P. Hays, and he wrote his address down on a small piece of paper. One letter came on the following Tuesday, which the defendant received, and two others after that day, which were handed over to the detectives. These two letters received at 610 Manhattan avenue and handed to the detectives were similar to the other letters, and each contained the same circular.

The defendant was indicted for a violation of the section of the Penal Code already mentioned, and was tried and convicted on three counts of the indictment, which charges him with using a name and address other than his own, for the purpose of carrying on, or assisting others in carrying on, the unlawful business prohibited by the statute, and of carrying on a scheme or device for advertising the sale of counterfeit money by receiving and taking from the mail a letter directed to the false address of C. E. Fuller, that name being other than the correct name and address of the defendant. The defendant has appealed from the judgment of conviction, and, aside from some questions relating to the admission of testimony, the contention is that it was necessary for the public prosecutor, before he could ask for a conviction of the defendant, to prove that the letters received at India street and Manhattan avenue were directed and sent there by reason of some relation or correspondence with the defendant; and it is insisted that there was no proof to show knowledge in the defendant of the reception of such letters; that he made any attempt to get them; that he knew the writers of such letters, or was in correspondence with them, or knew the contents of the letters. Such are the objections which require examination.

It is to be observed upon this question, that natural inferences from established facts constitute legitimate evidence in all cases, both civil and criminal, and the deduction to be drawn from the uncontradicted testimony and the established facts in this case, connect the defendant with the issuance of the circular beyond any reasonable doubt. Letters were received at India street addressed to O. E. Fuller, for the defendant, under an arrangement made by him for that purpose. They each acknowledge the receipt of a letter from the person addressed, and were answers to such letters, With the letters were a circular and a newspaper article which had been sent to the writer by the person whose letter he answered, and which were returned in pursuance of a request contained in the circular. Such are the undisputed facts, and the natural inference from them is this : The letters were written and sent to the person from whom the circular and newspaper clipping were received, for they were answers to that circular. As, therefore, the letters were sent to the defendant, it follows that he sent the circular and newspaper clipping to the person who wrote and sent the answer to the circular to him. The address of such answer to the defendant, under the fictitious name designated by him at the place selected by him, can be accounted for naturally upon no other assumption, and that theory harmonizes all the facts and transactions developed upon the trial.

The same conclusion is reached respecting the letters sent to Manhattan avenue for the defendant. Upon such lines of reasoning we easily reach the conclusion that the defendant sent out the circular offering for sale counterfeit paper money and used ficti tious and assumed names other than his own proper name. The object of the newspaper article is also plainly apparent; that was sent out with the circular to create a belief that the money offered was made from government plates and, therefore, genuine, or as good as genuine. The story related in the article is doubtless a fabrication and invented to subserve the purpose for which it was employed. It would be idle to suppose or believe that such a proceeding could transpire in a court of justice. Bills struck from government plates obtained surreptitiously would be as fraudulent and spurious as if printed from counterfeit or false plates, because they would be without the sanction of authority, and the interposition of such a

defense would be destitute even of plausibility and fail to deceive any court or secure the discharge of any person accused of a violation of the statute under consideration. Our conclusion, therefore, is that the evidence was sufficient to convict the defendant of circulating and distributing a circular offering for sale counterfeit paper money, and of using a false, fictitious and assumed name to promote and carry on a scheme for the sale, and offering for sale, counterfeit paper money; and that his conviction for such crime under this statute was justified by the evidence. Moreover it was in the power of the defendant to explain or deny much of the testimony adduced against him upon the trial, if the same was susceptible of denial or explanation; and his failure to make any effort in that direction leaves all the testimony to operate against him with undiminished force.

The conclusion reached upon the main question determines some of the questions of testimony involved adversely to the defendant; and we find no error in the proceedings during the trial, either in the admission of testimony or in the charge of the trial judge.

The conviction and judgment appealed from should, therefore, be affirmed.

BARNARD, P. J., and PRATT, J., concurred.

Conviction and judgment affirmed.